IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA M. KARN, | ) | CASE NO. 1:13 CV 1554 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Pamela M. Karn under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, the Court determined that this case can be decided without oral argument and, therefore, the telephonic oral argument scheduled for September 3, 2014,[10] was canceled.[11]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Karn, who was 42 years old at the time of the ALJ's decision,[12] completed the ninth grade[13] but did not obtain a GED or other further education.[14] She was previously married, has two sons, and lives with the youngest boy, who was 12 years old at the time of the hearing.[15] Her past work includes bartending, light assembly work, and as a child monitor.[16]

---

[6] ECF # 14.

[7] ECF # 17 (Karn's brief); ECF # 18 (Commissioner's brief); ECF # 19 (Karn's reply brief).

[8] ECF # 17-1 at 1-4 (Karn's charts), ECF # 18-1 (Commissioner's charts).

[9] ECF # 17-1 at 5-11 (Karn's fact sheet).

[10] ECF # 24.

[11] ECF # 25.

[12] Transcript ("Tr.") at 33.

[13] *Id.* at 296.

[14] *Id.* at 296-97.

[15] *Id.* at 28.

[16] *Id.* at 32, 235, 276.

The ALJ, whose decision became the final decision of the Commissioner, found that Karn had the severe impairment of bipolar disorder.[17]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Karn's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple routine, repetitive tasks. The claimant should have no work quotas or fast paced work. The claimant should not be involved with negotiation, arbitration, or resolution disputes. The claimant can have occasional contact with the general public. The claimant will be off task five percent of the time.[18]

The ALJ decided that this RFC precluded Karn from performing her past relevant work as a bartender and a child monitor.[19]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Karn could perform.[20] The ALJ, therefore, found Karn not under a disability.[21]

---

[17] *Id.* at 27.

[18] *Id.* at 29.

[19] *Id.* at 32-33.

[20] *Id.* at 33-34.

[21] *Id.* at 34.

**C.     Issues on judicial review and decision**

Karn asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Karn presents the following four issues for judicial review:

- The ALJ gave the opinion of Karn's treating psychiatrist, Dr. Testa, little weight. Did the ALJ properly analyze, weigh, and articulate with respect to Dr. Testa's opinion?

- The ALJ found that Karn could occasionally interact with the public and only be off task 5% of the time. Does this finding lack the support of substantial evidence given the ALJ's handling of Dr. Testa's opinion and consideration of other evidence of record?

- The ALJ found Karn's statements about the severity of her impairment and limitations therefrom less than credible. Does substantial evidence support this finding?

- The ALJ found at step three that Karn did not meet the requirements of § 12.04 of the listings. Does substantial evidence support this finding in light of the ALJ's handling of the opinion of Dr. Testa?[22]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed, with the matter remanded for further proceedings.

---

[22] ECF # 17 at 2.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[23]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[24] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[25]

---

[23] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[24] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[25] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[26]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[27]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[28] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[29]

---

[26] 20 C.F.R. § 404.1527(d)(2).

[27] *Id.*

[28] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[29] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[30] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[31] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[32] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[33]

In *Wilson v. Commissioner of Social Security*,[34] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[35] The court noted that the regulation expressly contains a "good reasons" requirement.[36] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[30] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[31] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[32] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[33] *Id.* at 535.

[34] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[35] *Id.* at 544.

[36] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[37]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[38] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[39] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[40] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[41]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[42] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[37] *Id.* at 546.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

-8-

standards, in assessing the opinions of treating sources.[43] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[44] *Blakley v. Commissioner of Social Security*,[45] and *Hensley v. Astrue*.[46]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[47] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[48] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[49] The treating source's non-controlling status

---

[43] *Id.* at 375-76.

[44] *Rogers*, 486 F.3d at 242.

[45] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[46] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[50]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[51] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[52] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[53] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[54] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[55]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[56]

---

[50] *Rogers*, 486 F.3d at 242.

[51] *Gayheart*, 710 F.3d at 376.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[57] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[58] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[59] or that objective medical evidence does not support that opinion.[60]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[61] The Commissioner's *post hoc* arguments on judicial review are immaterial.[62]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt

---

[57] *Rogers*, 486 F.3d 234 at 242.

[58] *Blakley*, 581 F.3d at 406-07.

[59] *Hensley*, 573 F.3d at 266-67.

[60] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[61] *Blakley*, 581 F.3d at 407.

[62] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[63]

- the rejection or discounting of the weight of a treating source without assigning weight,[64]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[65]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[66]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[67] and

---

[63] *Blakley*, 581 F.3d at 407-08.

[64] *Id.* at 408.

[65] *Id.*

[66] *Id.* at 409.

[67] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[68]

The Sixth Circuit in *Blakley*[69] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[70] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[71]

In *Cole v. Astrue*,[72] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[73]

---

[68] *Friend*, 375 F. App'x at 551-52.

[69] *Blakley*, 581 F.3d 399.

[70] *Id.* at 409-10.

[71] *Id.* at 410.

[72] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[73] *Id.* at 940.

**B.     Application of standards**

Although Karn raises four issues on judicial review, the last three issues concerning the scope of the RFC, Karn's credibility, and whether Karn met a listing, are all dependent on the primary question of whether the ALJ properly determined that the opinion of Karn's treating psychiatrist was entitled to only little weight and properly articulated good reasons for that conclusion. For the reasons set forth here, I conclude that the ALJ did not properly make that finding or adequately provide good reasons for the decision.

Initially, it is important to note that Megan Testa, M.D., who treated Karn in 2010 and 2011, completed four different opinion documents:

1.   An assessment dated August 10, 2010, which reflected Dr. Testa's observations since first treating Karn a month earlier;[74]

2.   A single page "To Whom it May Concern" letter of December 10, 2010;[75]

3.   A medical source statement dated December 17, 2010, which rates Karn's ability to perform various work-related mental activities;[76] and

4.   A mental functional capacity assessment dated March 29, 2011, which consisted of Dr. Testa checking the appropriate box on a list of various functions to indicate Dr. Testa's opinion as to Karn's level of impairment, and an attached page of Dr. Testa's narrative results of a mental status examination of Karn conducted the same day as the form was completed.[77]

---

[74] *Id.* at 504-06.

[75] *Id.* at 607.

[76] *Id.* at 608-09.

[77] *Id.* at 708-09.

The ALJ, in discussing the opinion evidence, considered only the March 29, 2011, opinion of Dr. Testa.[78] In his treatment of that opinion, the ALJ simply noted that "Dr. Testa found the claimant has primarily moderate and marked limitations in her mental ability to function," which she further opined made Karn "unemployable."[79] Without expressly acknowledging Dr. Testa as a treating source, the ALJ stated that he gave "little weight to the opinion of Dr. Testa because her opinion is inconsistent with her own treatment notes."[80] The ALJ pointed to a single note from July 9, 2011, that recorded Karn as being upset about her sister moving out of the apartment she shared with Karn and her son, and further stating she was stressed about finances.[81] The ALJ found that this observation was not consistent with the fact that Karn, while "irritable, [] is not overly angry or irritable," and does not account for the fact that she is in fact living independently with her son and dating an ex-boyfriend.[82]

Before addressing the analysis provided by the ALJ of Dr. Testa's opinion of March, 2011, I note first, as does Karn, that "the ALJ did not provide any analysis of the remaining three treating source opinions of Dr. Testa;"[83] opinions that Karn asserts "are consistent with

---

[78] *Id.* at 31.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] ECF # 17 at 15.

-15-

[Dr. Testa's] conclusions in Mental Functional Capacity [opinion] completed on March 29, 2011."[84] This failure to even cite to additional medical opinions from a treating source, without explaining such a decision, is a fatal flaw in the Commissioner's attempt to find substantial evidence supportive of the ALJ's reasoning.

As Karn observes, does the ALJ's comment that the opinion of March, 2011, is inconsistent with Dr. Testa's treatment notes mean that the other opinions of Dr. Testa must likewise be presumed inconsistent with her notes, without the need to say so?[85] Clearly, to have asked this question is to answer it. Speculation about what the ALJ may have thought *in pectore* about opinions he neither noticed nor summarized cannot provide a judicially reviewable "good reason" for according the opinions of a treating source less than controlling weight.

Moreover, the Commissioner plainly resorts to *post hoc* rationalization by arguing that the reason the ALJ considered the opinion he did to the exclusion of the others is that this opinion was "more detailed" than the others.[86] However interesting that analysis may be, it is the reasoning of the Commissioner's counsel, not that of the ALJ.

Even reading the ALJ's decision holistically, and so being willing to re-arrange the findings of the ALJ expressed anywhere in the decision into a single narrative on the issue of Dr. Testa's opinions, the decision here contains no analysis of three opinion statements

---

[84] *Id.*

[85] *Id.* at 16.

[86] ECF # 18 at 16.

of a treating source and no good reason as to why the single opinion that was addressed should receive so little weight.

As noted, if the treatment of the treating source is not supported by substantial evidence, then the remaining issues presented for judicial review must be deferred until the matter is remanded and Dr. Testa's opinions are appropriately weighed under the relevant standard and the ultimate finding in that regard properly supported by good reasons articulated by the ALJ on the record.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Karn had no disability. The denial of Karn's applications is reversed, and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: September 23, 2014						s/ William H. Baughman, Jr.
									United States Magistrate Judge